UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SCOTT T. EHNES,

                         Plaintiff,        **No. 1:15-cv-00828(MAT)**
                                            **DECISION AND ORDER**
        -vs-

CAROLYN W. COLVIN, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                         Defendant.

---

## INTRODUCTION

Represented by counsel, Scott T. Ehnes ("Plaintiff") instituted this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying his application for Disability Insurance Benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

Plaintiff protectively filed an application for DIB on April 17, 2012, alleging a disability onset date of February 19, 2012. His claim was initially denied August 10, 2012. On September 18,

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting Commissioner Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2012, Plaintiff filed a timely written request for hearing. On October 10, 2013, Administrative Law Judge William E. Straub commenced a hearing, but adjourned it because Plaintiff's representative had withdrawn recently, and he needed additional time to hire a new representative. On April 23, 2014, Administrative Law Judge David S. Lewandowski ("the ALJ") conducted a hearing in Buffalo, New York. Plaintiff appeared with his attorney and testified, as did impartial vocational expert Esperanza DiStefano ("the VE"). Plaintiff amended his alleged onset date to September 30, 2013. On August 26, 2014, the ALJ issued an unfavorable decision. (T.41-61). Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied on August 20, 2015, making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this action.

**THE ALJ'S DECISION**

The ALJ found that Plaintiff's date last insured for Title II purposes was March 31, 2016. At step one, ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 20, 2013, the amended alleged onset date.

At step two, the ALJ found that Plaintiff's has severe impairments of schizoaffective disorder with anxiety and depression. The ALJ determined that Plaintiff's attention deficit hyperactivity disorder and substance abuse are not severe impairments.

At step three, the ALJ compared Plaintiff's impairments to the Listing of Impairments and found that, considered singly or in

combination, they do not meet or medically equal any listed impairments, including Listings 12.03 (Schizophrenic, paranoid and other psychotic disorders); 12.04 (Affective disorders); 12.06 (Anxiety-related disorders); and 12.09 (Substance addiction disorders). With regard to the Paragraph "B" criteria, the ALJ determined that Plaintiff has mild restrictions in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. The ALJ also found that Plaintiff has experienced no episodes of decompensation which have been of extended duration; although he has had psychiatric hospitalizations in the past, he has not had any since the amended onset date.

The ALJ then assessed Plaintiff as having the Residual Functional Capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: (1) he can understand, remember, and carry out simple instructions and perform simple tasks; (2) he can occasionally make simple decisions; (3) he can frequently adapt to changes in a routine work place setting; and (4) he can occasionally interact with others but should be working independently and not be dependent on coworkers (e.g., no assembly line work).

At step four, the ALJ determined that Plaintiff cannot perform his past relevant work as assistant manager (skilled), line cook (skilled), and property maintenance manager (semi-skilled).

At step five, the ALJ relied on the VE's testimony that an individual of Plaintiff's age (younger individual age 18-49 on the

amended onset date) and with his education (high school diploma plus four years of college without attaining a degree), work experience, and RFC, would capable of performing the requirements of the following representative occupations: (1) Vehicle Washer, (Dictionary of Occupational Titles ("DOT") No. 919.687-014, medium exertion, unskilled (Specific Vocational Preparation ("SVP") 1), with 1,410 positions in the region and 311,940 positions in the national economy; (2) Hand Packer, DOT No. 920.587-018, medium exertion, unskilled (SVP 2), with 1,840 positions in the region and 917,470 positions in the national economy; and (3) Housekeeper/Cleaner, DOT No. 323.687-014, light exertion, unskilled (SVP 2), with 2,820 positions in the region and 917,470 positions in the national economy. Accordingly, the ALJ found that Plaintiff had not been under a disability as defined in the Act during the relevant time period.

## DISCUSSION

### I. Step-Five Error Due to Conflict Between VE Testimony and Agency Policy (Plaintiff's Point I)

Plaintiff argues that the ALJ's step-five finding is unsupported by substantial evidence because of a conflict between the VE's testimony and Social Security Administration ("SSA") policy articulating the requirements of unskilled work. (See Pl's Mem., Pt. I, at 11-13). As Plaintiff notes, "SSA adjudicators may not rely on evidence provided by a VE . . . or other reliable source of occupational information if that evidence is based on

underlying assumptions or definitions that are inconsistent with [the Commissioner's] regulatory policies or definitions." SSR 00-4P, 2000 WL 1898704, at *1 (S.S.A. Dec. 4, 2000). As an example, SSR 00-4P explains that "[a]lthough there may be a reason for [a VE] [to] classify[ ] the exertional demands of an occupation (as generally performed) differently than the DOT (e.g., based on other reliable occupational information), the regulatory definitions of exertional levels are controlling." Id.

Plaintiff also cites Program Operations Manual ("POMS"): DI 25020.010(A)(3)(a),[2] which identifies the four basic mental demands of competitive, remunerative, unskilled work as the abilities, on a "sustained basis," to understand, carry out, and remember simple instructions; make judgments that are commensurate with the functions of unskilled work, i.e., simple, work-related decisions; respond appropriately to supervision, coworkers, and work situations; and deal with changes in a routine work setting. Plaintiff notes that SSR 96-9P defines "sustained basis" as "8 hours a day, 5 days a week, or an equivalent work schedule." See Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, SSR 96-9P, 1996 WL 374185, at *2 (S.S.A. July 2, 1996) ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis; i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule.").

---

[2] Available at https://secure.ssa.gov/poms.nsf/lnx/0425020010 (last accessed Feb. 5, 2018).

Plaintiff notes that the ALJ, in his hypotheticals to the VE, included a limitation on making "simple decisions" to only "occasionally." Under SSR 96-9p, "occasionally" is defined as "occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday." According to Plaintiff, "for most of the workday, [he] would be unable to make simple decisions." Plaintiff reasons that "[t]his is certainly a substantial loss of the ability to perform an essential work-related mental activity and would (under SSA regulatory definitions) prevent him from

performing any unskilled work." (Plaintiff's Memorandum of Law ("Pl's Mem."), Point ("Pt.") I, at 12)). Plaintiff contends that the ALJ should have rejected the VE's testimony on this point under SSR 00-4p and awarded disability benefits outright.

As an initial matter, the Second Circuit has "recognize[d] that the POMS guidelines 'ha[ve] no legal force, and [they] do[ ] not bind the [Commissioner].'" <u>Tejada v. Apfel</u>, 167 F.3d 770, 775 (2d Cir. 1999) (quoting <u>Schweiker v. Hansen</u>, 450 U.S. 785, 789 (1981); all brackets except first in original). Respondent points out that the SSA's regulations define basic work activities as understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. <u>See</u> 20 C.F.R. § 404.1521(b). The regulations, in contrast to POMS DI 25020.010(A)(3)(a), do not list decision-making as a basic mental work activity. Since the Second

Circuit has stated that the POMS guidelines are not legally binding on the Commissioner, Plaintiff has not shown that the ALJ's RFC finding that he could occasionally make simple decisions is erroneous as a matter of law under the SSA's regulatory definitions.

Moreover, although Plaintiff attempts to quantify what constitutes a "substantial loss," SSA regulations and rulings do not define that term. Even assuming that the POMS guidelines have the force of law, POMS DI 25020.010 expressly notes that "[s]ubstantial loss cannot be precisely defined[,]" and "[i]t does not necessarily relate to any particular adjective, number, or percentage."[3] Thus, the adjective "occasional" does not lead to an automatic finding of disability. However, the Court need not conclusively resolve this argument since, on remand, the ALJ necessarily will have to conduct a new step-five analysis. At that time, the ALJ will need to consult a vocational expert, and Plaintiff can ensure that the ALJ obtains clarification on this point from the vocational expert.

**II. Appeals Council Error in Rejecting New and Material Evidence (Plaintiff's Point II)**

    **A.    Overview**

Plaintiff argues that the Appeals Council should have granted review of his claim based on his submission of medical records (T.15-36) from Erie County Medical Center ("ECMC") for the period

---

[3] Available at https://secure.ssa.gov/poms.nsf/lnx/0425020010 (last accessed Dec. 13, 2017).

September 22, 2014, through November 19, 2014. (See Pl.'s Mem., Pt. II, at 13-15). In denying Plaintiff's request for review, the Appeals Council stated that the ECMC records were not new and material evidence because the information post-dated the ALJ's August 26, 2014 decision. Plaintiff contends that this is legal error warranting remand under the sixth sentence of 42 U.S.C. § 405(g). According to Plaintiff, the ECMC records are crucial to evaluating his entire 12-month period of alleged disability. Plaintiff asserts that since he amended his onset date to September 30, 2013, any records up to September 30, 2014, are relevant. The Commissioner counters that the relevant period is September 30, 2013, to August 26, 2014, the date of the ALJ's decision. The Court agrees with Plaintiff, as discussed further below.

**B. Relevant Regulations**

A claimant may submit new evidence to the Appeals Council following an adverse ALJ disability determination without any showing of good cause. 20 C.F.R. §§ 404.970(b), 416.1470(b). The regulations provide that the Appeals Council "shall" consider "new" and "material" evidence that relates to the period on or before the date of the ALJ hearing decision. 20 C.F.R. §§ 404.970(b), 416.1470(b). A claimant must show that the proffered evidence is (1) "'new' and not merely cumulative of what is already in the record," and that it is (2) "material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." Lisa v. Sec'y of Health & Human Servs.,

940 F.2d 40, 43 (2d Cir. 1991) (internal citations omitted). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004) (citing Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988)). "Where the Appeals Council fails to consider such evidence, 'the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence.'" Santiago-Jimenez v. Comm'r of Soc. Sec., No. 15CIV3884GBDJCF, 2016 WL 5942318, at *3 (S.D.N.Y. Oct. 13, 2016) (quoting Shrack v. Astme, 608 F. Supp. 2d 297, 302 (D. Conn. 2009)).

    **C.    The New Records**

On September 22, 2014, Plaintiff was brought to the ECMC by Crisis Service because of his "bizarre behavior, [and] delusional ideas." Due to his degree of agitation, he had to be administered emergency medication on initial contact. The results of the mental status exam conducted at ECMC indicate that Plaintiff made no eye contact and was lethargic; had an uncooperative attitude; displayed inappropriate behavior; he had dysarthria when speaking; had an irritable, angry, and apathetic mood; and had an inappropriate affect, congruent to his mood. His thought process was simple and disorganized, and his thought content was delusional (according to ER staff and crisis services). He was experiencing hallucinations and delusions, and was unable to orient to time, place, and person. His intellectual functioning and judgment were impaired; his

insight was poor and limited. Plaintiff remained at ECMC until October 2, 2014, when was discharged by Dr. Wonhoon Park with diagnoses of "[m]ost likely schizophrenia, unspecified type and history of polysubstance abuse in short-term remission." (T.29).

About a month later, on November 8, 2014, Plaintiff was returned to ECMC due to aggressive behaviors and homicidal threats towards his family. Plaintiff apparently was trying to find the key to the gun safe in his parents' home (where he resided) and also was talking about purchasing a gun online to kill his father. His brother-in-law then called the police. Upon admission, Plaintiff could not explain why he was at the hospital. Plaintiff's mother reported that his behavior has been progressively escalating and he has become verbally, though not physically, aggressive, making threats to harm others in the family. Dr. Hong Yu noted, under past psychiatric history, that Plaintiff has been "diagnosed with schizophrenia. He had about 6 psychiatric admissions. No past suicide attempts. He has opiate abuse." (T.32). Plaintiff was discharged on November 19, 2014. Dr. Yu indicated that Plaintiff's diagnoses were schizophrenia, paranoid type, and opiate abuse. (T.33).

Plaintiff notes that the ALJ's decision was issued on August 26, 2014, before the one-year durational requirement for disability was met calculated based on his amended onset date of September 30, 2014. Because Plaintiff amended his onset date to September 30, 2013, at the hearing, the ALJ did not have the full 12 months for a proper evaluation. Plaintiff's first

hospitalization on September 22, 2014, was within the 12-month window. Plaintiff argues that these records reasonably show that the limitations from his mental impairments were more severe than at first evident.

The Court finds that the Appeals Council should not have rejected these records on the ground that they were "new information about a later time" and "does not affect the decision about whether [he] [was] disabled begining on or before August 26, 2014." (T.2). "Courts in this Circuit have consistently held that the Commissioner should consider new, material evidence that sheds light on the claimant's condition prior to the ALJ determination—even if the evidence post-dates that determination." Santiago-Jimenez, 2016 WL 5942318, at *3 (S.D.N.Y. Oct. 13, 2016) (citing Pollard, 377 F.3d at 193-94 (holding that new evidence was relevant to the time period for which benefits were denied even though the documents were generated after the ALJ decision); Lisa, 940 F.2d at 44 (finding that a diagnosis that emerged after the close of administrative proceedings was material because it shed considerable new light on the seriousness of claimant's condition); other citations omitted). Here, the records from both hospitalizations clarify the nature of Plaintiff's mental impairments and confirm the diagnosis of schizophrenia, paranoid type. "'[A] diagnosis of a claimant's condition may properly be made even several years after the actual onset of the impairment.'" Dousewicz v. Harris, 646 F.2d 771, 774 (2d Cir. 1981) (quoting Stark v. Weinberger, 497 F.2d 1092, 1097 (7th Cir. 1974); further

-11-

citation omitted; brackets in original). The ALJ did not list schizophrenia, paranoid type as one of Plaintiff's severe disorders, instead stating that he had schizoaffective disorder with anxiety and depression. However, these are two different mental impairments with different diagnostic criteria.[4] Also, the hospitalizations shows the volatile and cyclical nature of Plaintiff's mental impairments, and are relevant to evaluating the intensity, persistence, and limiting effects of his mental impairments. Because there is "reasonable possibility," Williams v. Comm'r of Soc. Sec., 236 F. App'x 641, 644 (2d Cir. 2007) (unpublished opn.), these records might influence the ALJ's disability determination, remand is required. See, e.g., Santiago-Jimenez, 2016 WL 5942318, at *3 (records material because they substantiated claimant's allegations regarding the intensity, persistence, and limiting effects of her claimed disability, and supplied evidence that the ALJ had found lacking in the record) (citing Williams, 236 F. App'x at 644 (finding that new evidence was material because it countered the ALJ's finding of insufficient evidence to support claimant's allegations of incapacitating pain); other citation omitted).

---

[4] See, e.g., Tandon, Rajiv. "Schizophrenia and Other Psychotic Disorders in Diagnostic and Statistical Manual of Mental Disorders (DSM)-5: Clinical Implications of Revisions from DSM-IV." Indian Journal of Psychological Medicine 36.3 (2014): 223–225, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4100404/ (last accessed Feb. 5, 2018).

**III. Erroneous Credibility Assessment (Plaintiff's Point III)**

Where a claimant offers statements his symptoms that are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry and explicitly consider seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken; (5) other treatment received; (6) other measures taken to relieve symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

In the present case, the ALJ wrote that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (T.49). However, as Plaintiff argues, the ALJ incongruously highlighted his participation in *physical* activities in order to discredit his subjective statements regarding the severity of his *mental* impairments. Furthermore, the ALJ inconsistently cited records that pre-dated the amended onset date to discredit Plaintiff's credibility, while rejecting any opinion evidence offered prior to the amended alleged onset date. (See T.53 (stating that "[a]s for the opinion evidence, the undersigned gives no weight to the opinion of the consultative examiner in Exhibit 1F, the State agency psychiatric consultant in Exhibit 2F, the consultative examiner opinion in Exhibit 6F, or the

-13-

State agency psychological opinion in Exhibits 8F and 9F, as these opinions were all rendered prior to the claimant's amended alleged onset date")). The ALJ also cited Plaintiff's "access to weapons" and stated that "[h]aving access to weapons seems inconsistent with someone who is disabled based on only a mental impairment." (T.54). The Court agrees with Plaintiff that it is difficult to fathom how an individual's access to weapons contradicts his assertions about the severity of his mental impairments. Moreover, as the newly submitted hospital records show, Plaintiff's access to weapons was a matter of grave concern in light of his homicidal threats toward family members.

**IV. Step Three Finding Unsupported by Substantial Evidence (Plaintiff's Point IV)**

Plaintiff argues that the ALJ's step three determination is erroneous based on an internal inconsistency, and is also unsupported by substantial evidence.

Here, the ALJ assigned no weight to the June 11, 2012 opinion of consultative psychologist Dr. Renee Baskin (T.338-41) because it predated the amended alleged onset date of September 30, 2013, but then primarily used Dr. Baskin's report to justify his step three findings. Specifically, with regard to the Paragraph "B" criteria of Listings 12.03, 12.04, 12.06, and 12.09, the ALJ determined that Plaintiff had only moderate difficulties in social functioning, noting that the "consultative examiner [Dr. Baskin at HO Exhibit 6F] reported that the claimant was responsive to questions and cooperative" and "[h]is manner of relating and social skills and

overall presentation was adequate." (T.47). To justify his assignment of only moderate limitations in maintaining concentration, persistence, or pace, the ALJ wrote that the "consultative examiner [Dr. Baskin at HO Exhibit 6F] reported on June 11, 2012, that the claimant's attention and concentration were intact," "[h]e was able to do counting, simple calculations and serial threes, albeit slowly," "[h]is recent and remote memory skills were intact," "[h]e recalled three out of three objects immediately and two out of three objects after five minutes," and "[h]e was able to do seven digits forward and three digits backwards." (T.47).

Later in the decision, however, the ALJ gave "no weight to . . . the consultative examiner opinion in Exhibit 6F," i.e., Dr. Baskin's report, because it was "rendered prior to the claimant's amended alleged onset date." (T.53). This the same type of error that marred the ALJ's credibility analysis. If the consultative examiner's opinion and findings are entitled to no weight, then it is internally inconsistent for the ALJ to rely on that opinion and findings to justify his step three determination.

**V. Erroneous Weighing of Physician Assistant's Opinion**

Plaintiff argues that the ALJ erred in assigning great weight to the Medical Source Statement of Ability to Do Work Related Activities (Mental) completed on August 29, 2013, by Anjana Porwal, RPA-C with the office of Dr. Eric Goodwin, at Western New York Medical, where Plaintiff received psychiatric treatment. (T.570-72). Dr. Goodwin is listed as the attending physician on the form,

-15-

which was completed and signed by RPA-C Porwal. The opinion is not favorable to a finding of disability, and is actually less restrictive than the ALJ's RFC assessment. For instance, the ALJ found that Plaintiff could only occasionally make simple decisions and occasionally interact with others, but should be working independently and not dependent on coworkers. (T.48). RPA-C Porwal indicated that Plaintiff had a slight limitation in making judgments on simple work-related decisions and no limitations in dealing with other people (T.570, 572). Plaintiff argues that the ALJ's RFC assessment is not based on substantial evidence because it conflicts with the only opinion assigned great weight. Plaintiff also faults the ALJ for relying on only one factor—the alleged consistency of RPA-C Porwal's opinion with the remainder of the record—to find it entitled to great weight. See SSR 06-3p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006) (discussing the factors that are appropriate in weighing "other source" opinions).

The Court need not resolve this contention because it has already found multiple independent grounds for remanding Plaintiff's claim. The Court notes that the ALJ will be required to reweigh all of the opinions in the record in light of the new medical evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is reversed because it is legally erroneous and unsupported by substantial evidence. Defendant's motion for judgment on the pleadings is denied, and Plaintiff's motion for judgment on the

pleadings is granted to the extent that the matter is remanded for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

---
HON. MICHAEL A. TELESCA
United States District Judge

Dated:   February 6, 2018
         Rochester, New York.